WILCOX, PLAINTIFF AND APPELLANT, v. AXTMAYER ET AL.,
DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan, Section 1, in
an Action to Recover Professional Fees.

No. 1309.—Decided January 10, 1916.

WITNESSES—REPEAL—EVIDENCE.—Section 3 of the Act of March 10, 1904, defin-
ing who are competent witnesses and repealing section 1215 of the Civil Code
and other laws, orders and decrees in conflict therewith, was not expressly re-
pealed by the Law of Evidence of March 9, 1905, nor is it in conflict therewith.

ID.—EVIDENCE—SUIT AGAINST HEIRS OR REPRESENTATIVES OF DECEASED PERSON.—
A party to an action brought in Porto Rico against the heirs or legal repre-
sentatives of a deceased person based on transactions had with the latter can-
not testify as a witness without first being called by the adverse party.

EVIDENCE—ERROR.—After examining the evidence in this case it was held that
there was no reason for concluding that in weighing the evidence in the manner
in which it did the trial court committed the manifest error attributed to it
by the appellant.

The facts are stated in the opinion.

*Mr. Henry G. Molina* for the appellant.

*Mr. Jacinto Texidor* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action to recover $1,500 for professional ser-
vices. The complaint was filed against Henry Axtmayer,
Ana Axtmayer and the Succession of Jacob Axtmayer com-
posed of Ana, Henry, Rosa, Joseph, Simon and Charles Axt-
mayer, and judgment was given against Henry Axtmayer
only for the sum of $800.

It is admitted that the plaintiff, an attorney practicing
his profession in this island, rendered services to Henry Axt-
mayer in the appeal of a certain action for divorce and in
various matters arising therein relative to the custody of one
of his children. The obligation on the part of Henry Axt-
mayer to pay for such services is evident and was not
discussed in this appeal. But the appellant alleged in his
complaint that the parents of Henry Axtmayer bound them-
selves to pay his fees and now contends that the evidence

introduced at the trial in support of his allegation was sufficient and that the trial court erred in deciding otherwise, for which reason its judgment should be reversed by this court.

The errors assigned by the appellant in his brief are as follows: (1) The trial court erred in excluding the testimony of the plaintiff relative to the conversation which he had had with Jacob Axtmayer; (2) the court committed manifest error in weighing the evidence as to the verbal agreement between the plaintiff and Jacob Axtmayer.

1. Let us examine the first error. For the purpose of proving that Jacob Axtmayer had agreed to pay the plaintiff for the services he had rendered to Henry Axtmayer, the plaintiff submitted, among other evidence, his own testimony. In analyzing the same the trial judge in his opinion expressed himself as follows:

"The plaintiff tells us in his testimony that Jacob Axtmayer was the only person who spoke to him about the payment of his fees, promising that he and his wife, Ana Axtmayer, would pay them. According to the Act of 1904 defining who are competent witnesses and repealing section 1215 of the Civil Code and all other laws, orders and decrees in conflict therewith, in actions by or against executors, administrators or guardians or by or against the heirs or legal representatives of a decedent, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party. In our opinion the provisions of this act continued in force after the enactment of the Law of Evidence because they are not in conflict therewith. Consequently, the testimony of Wilcox regarding the statements which he says Jacob Axtmayer made to him can have no weight in a court of justice."

Therefore, the question to be decided is whether a party to an action now brought in Porto Rico against the heirs or legal representatives of a deceased person based on transactions with the latter can testify as a witness without being called by the adverse party.

Article 1247 of the former Civil Code provided that persons directly interested in a suit, among others, were disqualified as witnesses. That provision was preserved in section 1215 of the Revised Civil Code of 1902. In 1904 the Porto Rican Legislature passed an Act to define who are competent witnesses and to repeal section 1215 of the Civil Code and all other laws, orders and decrees in conflict therewith. Section 1 of the said act provides that no person shall be incompetent to testify because he is a party to a suit or proceeding, or related to any of the parties therein, or because he is interested in the issue tried, and section 3 reads as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Under these conditions, in 1905 the Legislative Assembly of Porto Rico enacted a general law of evidence similar to that in force in California. Section 38 of the said law, which is the same as section 1879 of the Code of Civil Procedure of California, reads as follows:

"All persons, without exception, otherwise than is specified in the next two sections, who, having organs of sense, can perceive, and perceiving, can make known their perceptions to others, may be witnesses. Therefore, neither parties nor other persons who have an interest in the event of an action or proceeding are excluded; nor those who have been convicted of crime; nor persons on account of their opinions on matters of religious belief; although in every case the credibility of the witness may be drawn in question, as provided in section 21."

Section 39 differs from section 1880 of the Code of Civil Procedure of California in that it does not include two cases of incompetency which appear in the California code.

Section 40 of the law of Porto Rico is the same as section 1881 of the code of California.

Therefore, the prohibition contained in section 3 of the act of 1904 transcribed herein is not to be found in the Law of Evidence of 1905. Does this mean that it was the intention of the Legislature to establish absolutely the principle that the parties to civil actions may testify as witnesses even in actions against heirs arising out of alleged transactions with their decedents?

An examination of the Law of Evidence of 1905 as a whole discloses no provision expressly repealing the act of 1904 to which we refer. But it does contain a general repealing clause reading as follows: "All royal decrees, and general orders, acts and parts of acts in conflict with this act, are hereby repealed."

Does the act of 1904 conflict with the act of 1905? We agree with the trial court that it does not, because both acts can exist and have existed in practice in most of the states of the Union which, departing from the common-law rule, have permitted the parties to testify as witnesses.

Let us see what Cyc. says with regard to the general rule and to the exception.

"Some statutes render parties or interested persons absolutely incompetent as witnesses in their own behalf, so that they cannot testify in respect to any matter; but the larger number of statutes render such persons incompetent only as to certain designated matters, leaving them free to testify as to matters not included in the statutory prohibition. Accordingly, whether or not particular testimony is admissible depends upon the terms of the statute in force in the jurisdiction in which it is offered." 40 Cyc. 2310.

"The statutory rule that parties and interested persons are competent witnesses is subject to one exception which is almost as general as the rule itself, for in nearly all of the states the statutes impose restrictions upon the competency of parties and interested persons in actions by or against representatives, survivors, or successors in title or interest of persons deceased or incompetent. But it is held that the terms of the exception will not be extended by judicial con-

struction, nor will testimony be excluded where the case is not clearly within the terms of the statute.'' 40 Cyc. 2260.

As the district court did not commit the first of the errors assigned by the appellant, we will proceed to consider the second.

The brief of the appellant contains an able and careful analysis of the evidence. Not only the plaintiff, as stated, but also two other witnesses testified that the deceased Jacob Axtmayer had agreed to pay the fees now sued for, and several letters relating to the matter were offered in evidence. Witness Díaz Viera testified that at the time of the beginning of the suit in which the services were rendered he was engaged as attorney in the office of Charlton & Pettingill, which is on the same floor where the plaintiff has his office; that at times he used to work and sit in the plaintiff's office; that at that time Jacob Axtmayer made frequent calls at the plaintiff's office and one day while the witness was present the plaintiff told Jacob Axtmayer that Henry's case had assumed such a serious character that it promised to be both laborious and complicated and that in view of the fact that Henry had no property with which to secure him, the plaintiff desired to arrive at an understanding with him (Jacob) by which he would guarantee payment for his services; that Axtmayer then stated that he and his wife would pay the fees for Henry. Witness Frederick Timpson testified that he went to see Jacob Axtmayer at the request of the plaintiff in order to be certain whether he intended to pay the fees which his son owed to the plaintiff and that Axtmayer admitted his obligation to pay the same and stated that he was disposed to do so provided the account were reduced to a reasonable figure.

Referring to the foregoing testimony the trial judge said:

''The testimony of Timpson, whom the deceased knew as an employee of Wilcox, and that of Attorney Díaz Viera, have not convinced us, and in such circumstances we are not in a position to hold positively that Jacob Axtmayer agreed to pay directly the amount

of the plaintiff's fees in the manner claimed by the latter in his amended complaint.''

And, finally, in analyzing the rest of the evidence the judge of the district court said:

"There has been introduced in evidence a letter dated May 28, 1913, addressed to the late Axtmayer by Wilcox, referring to a verbal agreement entered into with the said deceased by which the latter made himself and his wife responsible for the payment of the fees owing by their son Henry. With this letter Wilcox sent a draft of an agreement to be signed by Jacob Axtmayer and his wife, by which, if signed by them, they would have bound themselves to pay directly the fees claimed. The said agreement was not signed by the said spouses. On June 17, 1913, the plaintiff wrote a letter to Axtmayer fixing the amount of his fees at $1,500 and demanding immediate payment of the said sum. Axtmayer answered this letter stating that he would send the bill to his son and that as soon as he heard from the latter he would communicate his reply to Wilcox. 'According to my understanding,' wrote Axtmayer, 'there is some mistake in the amount charged.' On April 18, 1914, the said plaintiff wrote a letter to Rosa Axtmayer, Henry's sister, complaining that Henry had not paid him and asking for his address in order that he might write him regarding his fees. In this letter Wilcox asked Rosa Axtmayer whether she was not authorized to pay for Henry and charge the amount to his inheritance.

"In view of the foregoing we are of the opinion that in order to dispel the doubt which the same creates in the mind of the court Wilcox should have proved in a clear and satisfactory manner that Jacob Axtmayer had really agreed to pay the fees of his son in the manner alleged. As to the wife of the deceased, we are of the opinion that he never had any authority to bind her without her consent. In order to recover from Jacob Axtmayer and his wife without first taking the necessary steps to collect the fees from Henry Axtmayer, the burden was upon the plaintiff to prove his allegations as made in the complaint, and as no satisfactory evidence has been introduced on this point, we are of the opinion that Henry Axtmayer is alone liable and judgment should be rendered against him because he has been sued in his individual character and as heir.''

After carefully considering the evidence, we do not find ourselves justified in concluding that in weighing the evidence

in the manner in which it did the trial court committed the manifest error attributed to it by the appellant.

Great caution should be exercised in weighing evidence like that introduced in this action. Jacob Axtmayer had died when the complaint was filed. The plaintiff was unable to offer in evidence any document by which Axtmayer had acknowledged directly or indirectly in a clear and unmistakable manner the obligation which the plaintiff alleges he contracted with him, and to prove such an obligation by admitting alleged statements of a person who is no longer able to appear before a court and testify, is indeed very venturesome.

Perhaps the testimony of the plaintiff and his witnesses is absolutely true. The attitude which he says Jacob Axtmayer assumed when he perceived the peril of his son is logical. The facts might have occurred in the manner in which the plaintiff and his witnesses narrate them. But the trial court; the court of first instance; the court which heard the testimony direct, was not satisfied, and in the absence of a flagrant error we should not be justified in substituting our opinion therefor.

Therefore, the appeal should be dismissed and the judgment appealed from

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.